**SHANSHAN ZOU, State Bar #263214**
**MERCA LAW GROUP**
1 Sansome Street, Suite 3500
San Francisco, California 94104
Telephone: 415-677-4497

Attorney for Plaintiff
Zhi Sun

# UNITED STATES DISTRIC COURT

## NORTH DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHI SUN; | ) Case No. |
| Plaintiff, | ) |
| vs. | ) **COMPLAINT** |
| YIQI WU, AIMERCE, INC., and DOE DEFENDANTS 1 TO 10, | ) |
| Defendants. | ) |

Plaintiff ZHI SUN ("Sun" or "Plaintiff") for her Complaint against Defendants YIQI WU ("Wu"), AIMERCE, INC. ("Aimerce") and DOE DEFENDANTS 1 to10 ("Doe Defendants") hereby alleges as set forth herein:

## THE PARTIES

1. Sun is a Chinese citizen and Aimerce's co-founder, who currently resides in China.

2. Yiqi Wu is an individual with her last known residence in California, with her working address in San Francisco, California.

3. Aimerce is a Delaware incorporated Corporation with its principal business address in San Francisco, California.

4. Doe Defendants are unnamed defendants whose identities are currently unknown to Plaintiff and therefore Plaintiff sues each of them by such fictitious name on the good faith

1    belief that Does are responsible in some manner for the practices, acts, conducts and

2    occurrences alleged herein.

3        5.   Plaintiff will seek leave of this Court to insert the true name of Doe Defendants, and the

4    roles each played once their identities and/or manner of participation in the wrongful conducts

5    herein described is ascertained.

### JURISDICTION AND VENUE

6

7        6.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d). The

8    requirement of minimal diversity is met as the amount in controversy exceeds the amount of

9    $75,000.00, exclusive of interest and costs, and the dispute is between citizens of a state and a

10   citizen of a foreign state. See 28 U.S.C. § 1332(d)(2).

11       7.   This Court has personal jurisdiction over Defendants based on the written venue choice

12   of California set forth in the numerous agreements between parties.  See 28 U.S.C. § 1404(b).

### GENERAL ALLEGATION

13

14   #### Co-Funding Aimerce

15       8.   Sun and Wu were ex-coworkers from Meta or formerly known as Facebook.

16       9.   With strong AI technology backgrounds, Sun and Wu left Meta and became two and only

17   co-founders of their AI start-up company Aimerce which was incorporated in May 2023 with its

18   one and only office in San Francisco.

19       10.  While Sun devoted all her time, efforts and expertise to develop the key AI products for

20   Aimerce since May 2023, Wu was employed by Reddit and did not join Aimerce until July

21   2023, approximately.

22       11.  However, after Wu joined, she tactically claimed the title of CEO and CFO to gain unfair

23   control of Aimerce. Sun serving as CTO for Aimerce continuously devotes herself to building

24   team for Aimerce by recuring her ex-coworkers to build the AI engineer team, identify

25   customers and investors, attend trade fairs and sell Aimerce's AI products and services.

26       12.  With Sun and Wu's joint efforts to raise fundings, Aimerce raised $5,170,002.00 Seed

27   Round capital by October 27, 2023, with the majority funding raised from the San Francisco

28   Bay Area or Silicon Valley. Aimerce is currently valued at over $20 million.

13. It is clear now that Wu previously formed a plan to forfeit Sun's co-founder's interest even before Aimerce raised its capital, therefore Wu always maintains a tight grab of Aimerce's operation, including setting up bank account, managing Aimerce's financials, and maintaining the full control of Aimerce's counsels to serve her personal interests.

14. Wu also falsely misled Sun with share structure, vesting policy, tax liabilities, employment and all other issues of Aimerce. To falsely mislead Sun, Wu even claimed that Wu would resign from Aimerce while Wu was causing Aimerce's counsels to compromise Sun and Aimerce's interests and rights for her own benefit.

15. Sun repeatedly requested Wu to set up a payroll for Aimerce so both co-founders and Aimerce's subsequently hired employees can be properly compensated under the California labor law can be complied pursuant to the employment agreement Sun executed under the California Law.

16. Wu refused to do so with made up excuses and falsely told Sun that Deel, the global hiring program and application, would not allow a founder's payroll to be set up, by providing false payroll policy to Sun. But in fact, Wu did not want to set up a proper payroll to pay Sun with intention to undermine Sun's interests and rights as a co-founder and full-time employee of Aimerce.

17. Therefore, even though Wu caused Aimerce to make a wiring transaction to Sun to pay for the business expenses Aimerce incurred to purchase equipment, attending trade fairs and other office expenses, Sun never received any wage or salary compensation for her employment with Aimerce.

18. Therefore, even though Wu caused Aimerce to make a wiring transaction to Sun to pay for the business expenses Aimerce incurred to purchase equipment, attending trade fairs and other office expenses, Sun never received any wage or salary compensation for her employment with Aimerce.

### Forfeiting Co-Founder Interests

19. On February 6, 2024, during a meeting, Sun informed Wu that Sun was pregnant with

risk of miscarriage. On February 9, 2024, within less than three days of the meeting, Sun discovered that her access to Aimerce's banking information was all blocked.

20. After Sun asked Wu what was going on, Wu started to fabricate claims against Sun, claiming Sun "lacking leadership as CTO" and indicated that she wanted to have someone else to replace Sun and forced Sun to leave Aimerce.

21. During the next a few days, Sun replied to Wu in writing to clarify that none of the alleged "bad performance" has any factual basis and requested to have further communication with Wu while she was fully committed as Aimerce's co-founder and CTO. True and correct copies of the emails exchanged between Sun and Wu are attached hereto as **Exhibit 1**.

22. After receiving Sun's email, Wu sent threatening messages to Sun through WeChat clearly knowing Sun is at a vulnerable stage in her pregnancy.

23. Stressed out by Wu, Sun had no choice but to engage an attorney, so her attorney could assist her with the communication with Wu or Wu controlled Aimerce.

24. On February 15, 2024, Sun's attorney sent a letter to Aimerce's counsels to introduce herself of Sun's attorney, requesting Aimerce to direct future communications to her rather than Sun, and requested Sun's payroll records with Aimerce and fully executed legal documents of which Sun is a signatory. A true and correct copy of the letter dated February 15, 2024, is attached hereto as **Exhibit 2**.

25. After the letter was sent, Wu immediately hinted threats to Sun in WeChat claiming that since now Sun has an attorney now, Wu would "leave everything to law firms". A true and correct copy of Wu's WeChat message to Sun is attached hereto as **Exhibit 3.**

26. On February 16, 2024, less than 24 hours after Sun's attorney sent out the letter to Aimerce's counsels, Wu took the matter in her own hand contradicting what Wu said on WeChat. Wu personally, sent out an email to Sun claiming that Sun's employment is terminated by her as Aimerce's CEO, and with Notice of Exercise of Repurchase of Option and $45.00 wired to Sun, claiming such an amount is buying back Sun's 45% co-founder's shares of stock with $0.0001 per share. Wu's email used the time zone in China and therefore such February 16, 2024 showing the date of February 17, 2024.

27. Also on February 17, 2024, Aimerce's counsel sent out a Notice claiming Sun had been removed from Board of Directors of Aimerce. True and correct copies of Notice of Termination, Notice of Exercise of Repurchase of Option, and Aimerce's counsel email with Notice of Removal are attached hereto as **Exhibits 4, 5, 6**, respectively.

28. The Notice of Termination contains inaccessible links to Wu self-claimed "proofs" probably generated after February 6, 2026 of why Sun was terminated as her made up excuse to cover up Wu's true intention to discriminate against Sun as a pregnant woman or a mother-to-be, alongside to Wu's intention to forfeit Sun's interests and rights in Aimerce as co-founder, shareholder, director, CTO, and a full time employee since its incorporation.

29. Sun, through the counsel under her personal control, immediately protested against the validity of such wrongful termination of employment, exercise the repurchase of Sun's co-founder's shares in Aimerce and the removal of Sun as a director without any meeting or consent.

30. Thereafter, Aimerce's counsels refused to engage in any meaningful communication nor even declined Sun's proposal of mediation while acting hostile and completely serving Wu's personal interest rather than engaging any good faith communication for the interest of Aimerce. Even though Aimerce's counsels had confirmed that Wu does not have a personal attorney, they threatened Sun's counsel when she reached out to Wu directly to seek settlement.

### Alter Ego

31. Before and after Aimerce received its seeds round investment, Wu always treated Aimerce as her alter ego for her personal gains and unlawful control disregarding Aimerce's separate business entity.

32. Through taking illegal actions on her own and manipulating Aimerce's counsels, Wu caused Aimerce to prepare certain corporate documents by Grellas Shah LLP to reflect her premediated intention to forfeit Sun's co-founder, shareholder, director and full-time employee as CTO's interests and rights for her unlawful personal gain.

33. In addition, Wu caused Aimerce to ignore all the legal compliance requirements, including but not limited setting up a proper payroll for its employees and paying its employees'

1    salaries, holding proper shareholders' meeting or directors' meetings, and "terminate" Sun's

2    employment at Aimerce so Wu could unlawfully disregard Sun's co-founder, shareholder,

3    director and full-time employee as CTO's interests and rights.

4    **FIRST COUNT**

5    **Conversion – against Wu**

6       34. Plaintiff Sun incorporates all the foregoing paragraphs by reference and realleges them as

7    though they are fully set forth herein.

8       35. Sun has been one of two co-founders, shareholder of 45% co-founder original shares,

9    director in Board of Director and full-time employee as CTO since the incorporation of

10    Aimerce.

11       36. Sun started to work for Aimerce even before Wu left Reddit and joined Aimerce, and

12    successfully developed and marketed AI products which have been generating profits for

13    Aimerce while Wu's similar project in Aimerce failed.

14       37. Sun also participated in raising the capital for Aimerce, including but not limited to,

15    identifying who would be the potential investors and provided such information to Wu,

16    presenting Aimerce and its AI services, products and marketing strategy and conducting

17    interviews with all investors.

18       38. Sun is informed and believes, and upon such good faith belief, alleges that Wu formed an

19    intention to forfeit Sun's interests, rights, all work and added value to Aimerce as a co-founder,

20    shareholder, director and CTO no later than August 1, 2023.

21       39. Soon after Aimerce received its seed round of funding, Wu started to take action to

22    secretly push Sun out of Aimerce.

23       40. As soon as Wu found that Sun was pregnant and had miscarriage risk on February 6,

24    2024 for the first time, Wu decided that she could take Sun's vulnerability caused by her

25    pregnancy and immediately blocked out Sun's access to Aimerce's online banking.

26       41. Immediately after, in and about February 11 to 13, 2024, Wu emailed Sun with false

27    statements claiming Sun had a bad performance as a CTO and made numerous threats to Sun on

28    WeChat with the intention to force Sun to resign voluntarily.

42. Sun defended herself with written clarification showing that Wu claiming bad performance was not true and insisted her interests, rights and contribution as one of two co-founders, shareholder of 45% co-founder original shares, director in Board of Director and full-time employee as CTO should be protected.

43. Affected by harassment by Wu, on or about February 14, 2024, Sun had to engage an attorney to help her communicate with Aimerce's counsels who acted in conflict of interest while compromising Aimerce's interest but assisting Wu's illegal personal gains.

44. On February 15, 2024, Sun's counsel merely sent out a written request asking for Sun's employment records and the fully executed corporate documents which Sun signed as co-founder and shareholder.

45. After the letter sent by Sun's attorney to Aimerce's counsels requesting further communication acting on behalf of Sun, Wu immediately sent message to Sun claiming that since Sun now has an attorney, she would take further action against Sun. With less than 24 hours, on February 16, 2024, Wu "terminated" all Sun's positions in Aimerce while forced to buy back Sun's 45% shares of co-founder's stock with only $45.00.

46. Sun had and should still have at least 45% ownership of Aimerce by February 15, 2024.

47. By acting maliciously to forfeit Sun's interests, rights and contributions to Aimerce, Wu caused Sun's ownership, rights and interests vested in Aimerce converted to Wu by wrongfully terminating all Sun's positions in Aimerce with only paying $45.00 to Sun.

48. After pushing Sun out of Aimerce, Wu acts as the only founder with ownership of all outstanding co-founder's stock in Aimerce.

49. Sun did not consent to and strongly protest against such conversion before and after February 15, 2024, both in person and in writing.

50. Sun was harmed directly due to Wu's conversion of Sun's interests, rights and contributions as interests, rights and contribution as one of two co-founders, shareholder of 45% co-founder original shares, director in Board of Director and full-time employee as CTO.

51. Sun prays to recover her losses and damages for the amount to be shown at trial.

52. Wu acted with fraud, malice, oppression, or with conscious intention to convert Sun's interests, rights and contribution in Aimerce. Therefore, Sun is entitled to an additional award of exemplary and punitive damages to be shown at trial.

## SECOND COUNT

### Breach of Fiduciary Duty – against Wu

53. Plaintiff Sun incorporates all the foregoing paragraphs by reference and realleges them as though they are fully set forth herein.

54. Sun has been a 45% shareholder of Aimerce since its incorporation on or about May 3, 2023, while Wu is the 55% shareholder of Aimerce as both Sun and Wu's ownership interests in Aimerce created at the same time as two and only two co-founders.

55. Based on Sun and Wu shareholders' interests vested before Aimerce received its seed round funding, Wu owes a fiduciary duty to Sun, a minority shareholder.

56. However, Wu maliciously disregarded Sun's interests, rights and contributions in Aimerce as a co-founder, shareholder, director and full-time employee serving as CTO of Aimerce.

57. To forfeit Sun's interests, rights and contributions in Aimerce as a co-founder, shareholder, director and full-time employee serving as CTO of Aimerce, Wu abused her personal control of Aimerce as her alter ego by February 16, 2024, by "terminating" Sun's employment, removing Sun from the Board of Director and "forcing to buy back" Sun's co-founder shares with $45.00. Therefore, Wu breached her fiduciary duty as a shareholder, director, and CEO to damage Sun's interests and rights in Aimerce.

58. Caused by Wu's malicious breach of fiduciary duty, Sun suffered direct damage as Aimerce's co-founder, shareholder and director, with the amount to be shown at trial.

59. Wu acted with fraud, malice, oppression, or with conscious intention to breach her fiduciary duty owed to Sun. Therefore, Sun is entitled to an additional award of exemplary and punitive damages to be shown at trial.

///

///

///

## **THIRD COUNT**

### **Intentional Inference of Contractual Relationship – against Wu**

60. Plaintiff Sun incorporates all the foregoing paragraphs by reference and realleges them as though they are fully set forth herein.

61. Wu knows and always has the acknowledge of that Sun has the following contractual relationship with Aimerce: (1) Sun as a co-founder has purchased 45% of all outstanding stock of Aimerce, (2) Sun has entered into an Employment Agreement with Aimerce as its full-time employee as a CTO.

62. Abusing control of Aimerce as Wu's alter ego, with the malicious intention to forfeit Sun's interests, rights and contribution as co-founder, shareholder, and director in Aimerce, Wu caused Aimerce to (1) terminate Sun's employment contract, (2) force to buy back Sun's 45% co-founder's shares of stock with only $45.00, and (3) remove Sun from Board of Director and therefore terminate Sun's shareholder and director interests and rights.

63. Wu also made false and disparaging statements attacking Sun to mislead the investors of Aimerce to believe that (1) Sun failed to perform her CTO's positions, (2) Sun's co-founder, shareholder, director and CTO's positions should be terminated, (3) Wu and the counsels from Grellas Shah LLP under Wu's instruction served Aimerce best interest, (4) Wu caused Aimerce to comply with legal requirements and (5) Wu caused Aimerce or its counsels engaged in good-faith communication to seek amicable resolution following Wu malicious actions to forfeit Sun's interests and rights in Aimerce.

64. Wu intentionally disrupted Sun's contractual relationship with Aimerce caused direct damage to Sun and therefore Wu should be liable to make Sun whole.

65. Sun suffers direct loss from Wu's interference of the above-mentioned contractual relationship with the amount to be shown at trial.

66. Wu acted with fraud, malice, oppression, or with conscious intention to interfere with the contractual relationship herein.  Therefore, Sun is entitled to an additional award of exemplary and punitive damages to be shown at trial.

///

## **FOURTH COUNT**

### **Intentional Inference of Perspective Economic Relationship - against Wu**

67. Plaintiff Sun incorporates all the foregoing paragraphs by reference and realleges them as though they are fully set forth herein.

68. Sun had participated in obtaining the capital funding as Aimerce's co-founder, shareholder, director, and full time CTO serving Aimerce, as an AI startup company incorporated in May 2023 with only Sun and Wu raised over $5 million, especially with Sun diligently led the team she recruited and directed for research and development, and open Aimerce's market in the US and in China, and presented such information and records to investors to pursued them to invest in Aimerce.

69. Wu has a full knowledge of the economic relationship between Sun and Aimerce's investors and potential investors.

70. If Wu did not forfeit Sun's interests and rights as co-founder and shareholder of Aimerce, Sun would have received future benefits from Aimerce's investors and potential investors making future investments in the company.

71. However, Wu intentionally disrupted such economic relations or perspective economic benefits by (1) making false statements claiming Sun did not provide good performance as a CTO, (2) terminating all Sun's positions in Aimerce, and (3) forcing to buy back Sun's co-founder shares with only $45.00.

72. Due to Wu's wrongful actions, Sun was unable to receive the prospective economic benefits she should have received as Aimerce's co-founder, original shareholder and CTO.

73. Sun suffers direct loss from Wu's interference of the above-mentioned perspective economic benefit as Aimerce's co-founder and original shareholder with the amount to be shown at trial.

74. Wu acted with fraud, malice, oppression, or with intention to interfere with the contractual relationship which would benefit Sun as alleged herein.  Therefore, Sun is entitled to an additional award of exemplary and punitive damages to be shown at trial.

///

## FIFTH COUNT

### Employment Discrimination – against Wu and Aimerce

75. Plaintiff Sun incorporates all the foregoing paragraphs by reference and realleges them as though they are fully set forth herein.

76. Under her Employment Agreement under the California Law, Sun's employment with Aimerce's as a full-time employee serving as CTO from Aimerce's incorporation.

77. On February 16, 2024, Sun's employment was terminated by Wu, the CEO of Aimerce, who discriminated against Sun due to her pregnancy in addition to Wu's intention to forfeit Sun's interests, rights and contributions in Aimerce as co-founder, shareholder, director and CTO.

78. As soon as Sun informed Wu that Sun was pregnant at risk of miscarriage on February 6, 2024, Wu immediately blocked Sun's access to Aimerce's bank account which Sun discovered on February 9, 2024. Within the next 5 days, Wu terminated Sun's employment completely without consideration of Sun's medical conditions and intentionally caused stress by Wu.

79. Wu's discrimination against Sun, based on Sun's pregnancy is in violation of Civil Rights Act, Title VII, as amended by the Pregnancy Discrimination Act, which provides that discrimination on the basis of pregnancy, childbirth, or related medical conditions is a type of unlawful sex discrimination.

80. The Fair Employment and Housing Act ("FEHA") also requires Defendants Wu and Aimerce to refrain from discrimination against an employee on the basis of her gender/sex and pregnancy.

81. As a direct, proximate, and foreseeable result of the Defendants' acts or failures to act, as alleged herein, Sun has suffered and continues to suffer substantial losses in earnings and employment benefits, injury to her interests and rights in Aimerce as a co-founder, shareholder, and CTO, and extreme and enduring emotional distress, including but not limited to humiliation, severe mental and emotional distress, and discomfort. All of these damages will be proven at trial.

///

82. Wu and her alter ego Aimerce committed the acts herein alleged maliciously, fraudulently, and oppressively with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice, in conscious disregard for Plaintiff's rights and thus an award of exemplary and punitive damages is justified.

## SIXTH COUNT

### Wrongful Termination against Public Policy – against Wu and Aimerce

83. Plaintiff Sun incorporates all the foregoing paragraphs by reference and realleges them as though they are fully set forth herein.

84. Per her Employment Agreement under California Law, Sun has been employed full-time as the CTO of Aimerce since its incorporation.

85. On February 16, 2024, Sun's employment was terminated by Wu, the CEO of Aimerce.

86. California has a fundamental, substantial, and well-established public policy, as expressed in FEHA and other laws and regulations, prohibiting retaliation and discrimination against employees with pregnancy and other medical conditions.

87. Acting as Wu's alter ego, Aimerce violated that important public policy by terminating Sun's employment with Aimerce soon after Sun informed Wu of her pregnancy conditions. Furthermore, Aimerce violated that policy by terminating Sun's employment, at least in part, because she requested for reasonable accommodations by having her attorney involved in communicating with Wu and/or Aimerce's counsels who acted in conflict of interest in serving Wu's personal interest but compromised Aimerce's best interest in complying with legal requirements or preventing any amicable resolution.

88. Wu and her control over Aimerce's conduct were extreme and outrageous and were substantial factors in causing Plaintiff Sun's injuries, which include, but are not limited to, loss of interests and rights in Aimerce as a co-founder, shareholder, director, and CTO, economic damages, humiliation, severe mental and emotional distress, and discomfort. All of these damages will be proven at trial.

89. Wu and her alter ego Aimerce committed the acts herein alleged maliciously, fraudulently, and oppressively with the wrongful intention of injuring Plaintiff, and acted with

1    an improper and evil motive amounting to malice, in conscious disregard for Plaintiff's rights

2    and thus an award of exemplary and punitive damages is justified.

3                                   **SEVENTH COUNT**

4                **Failure to Pay All Wages – against Wu and Aimerce**

5        90. Plaintiff Sun incorporates all the foregoing paragraphs by reference and realleges them as

6    though they are fully set forth herein.

7        91. Under California law, Aimerce is required to pay wages or salaries to Sun as Sun worked

8    as a full time CTO from Aimerce's incorporation to February 15, 2024, before Wu caused her

9    controlled Aimerce to terminate Sun's employment with Aimerce.

10       92. Even though Sun repeatedly requested Wu to set up a payroll for Aimerce so Sun could

11   received salary properly, Wu did not do so, or secretly set up Aimerce's payroll but never told

12   Sun nor paid Sun.

13       93. Sun only received some funds which Wu caused Aimerce to wire to Sun to reimburse her

14   and cover Aimerce's business expenses, including participation in trade shows, purchasing

15   equipment, and other operating costs.

16       94. Sun never received any salary payment or any payroll stub.

17       95. As a result of Wu's causing Aimerce's violation of statutory mandates to pay employees

18   for statutory wage requirements, as more fully set forth above, Sun was damaged in an amount

19   to be determined at trial.

20       96. Sun seeks damages as all wages owed by Aimerce, with Wu jointly liable. Plaintiff

21   further seeks an award of prejudgment interest on the unpaid wages herein.

22       97. Sun has incurred, and will continue to incur, attorneys' fees and costs in the prosecution

23   of this action, and Plaintiff therefore seeks attorneys' fees and costs under all applicable

24   provisions of law.

25                                   **EIGHTH COUNT**

26   **Failure to Pay All Wages upon Separation – against Wu and Aimerce**

27       98. Plaintiff Sun incorporates all the foregoing paragraphs by reference and realleges them as

28   though they are fully set forth herein.

99. California Labor Code §§ 201 and 202 require that employers pay all employees all wages immediately upon employer termination or within 72 hours after employee resignation. California Labor Code § 203 provides that in instances that an employer willfully fails to pay all wages owing within the proscribed time limits, the employer must continue to pay the subject employee wages until the wages are paid in full. An employee need not prove malice or intentional conduct in establishing a claim for waiting time penalties, but rather must merely establish that the employer did not pay as it was obligated to do.

100. Sun was not paid all wages owed to her when Wu caused Aimerce to wrongfully terminate Sun's employment on February 16, 2024. In fact, aside from the $45.00 received for the alleged forced buyback of Sun's 45% shares in Aimerce, Wu caused Aimerce to pay nothing after Sun worked for approximately 10 months as CTO in Aimerce, an AI company that successfully raised over $5 Million investment.

101. As result of Wu causing Aimerce's violation of statutory mandates to pay employees for statutory wage requirements, as more fully set forth above, Sun was damaged in an amount to be determined at trial.

102. Sun seeks damages as all wages owed by Aimerce, with Wu jointly liable. Plaintiff further seeks an award of prejudgment interest on the unpaid wages herein.

103. Sun has incurred, and will continue to incur, attorneys' fees and costs in the prosecution of this action, and Plaintiff therefore seeks attorneys' fees and costs under all applicable provisions of law.

### PRAYER

WHEREFORE, Plaintiff Sun makes the following demand:

(a) That process be issued and served as provided by law, requiring Defendants, and each of them, to appear and answer or face judgment;

(b) For general, special, actual, compensatory and/or nominal damages against Defendants Wu and Aimerce, jointly and severally, an amount to be determined at trial;

(c) For punitive damages in an amount to be determined at trial sufficient to punish, penalize and/or deter Defendant Wu from engaging in the conduct described herein;

(d) For back and /or front pay and other benefits Sun would have been afforded but-for Defendants Wu and Aimerce's unlawful conduct;

(e) For statutory penalties as allowed by law;

(f) For costs and expenses of this litigation;

(g) For reasonable attorneys' fees, where applicable;

(h) For pre and post-judgment interest on all damages and other relief awarded herein from all individuals and entities against whom such relief may be properly awarded; and,

(i) For all such other and further relief as the nature of the case may require and the court deems appropriate and just.

Dated: May 6, 2024

Merca Law Group

*/s/ Shanshan Zou*
Shanshan Zou, Esq.
Attorney for Plaintiff

# EXHIBIT 1

**Zhi Sun <zsun@aimerce.ai>**                                    Tue, Feb 13,
                                                                      6:38 PM

to Yiqi

The accusations in Yiqi's email are simply not true and unheard of.

Firstly, Yiqi states that I "lack of leadership as CTO". As a co-founder and CTO, I have built a strong team of engineers to deliver the Aimerce inception with technical innovation. Under my leadership, the team has delivered the following major products and accomplishments.

- **[May - Sept 2023] Generative AI Website Generator** - We built a next-generation one-click e-commerce site builder. This utilized the latest advances in AI to create websites on behalf of actual customers. During this phase of the company, we had real customers utilizing the generator for their own purposes. As the CTO, I was responsible for building the team, writing a good portion of the code and delivering features. Additionally, I also worked in marketing and customer acquisition. As a result, we were able to obtain $2,000 daily GMV under my leadership. The main reason we acquired seed funding was due to me and my team's efforts. During this project, Yiqi primarily worked as a software engineer and investors main contact. She was not actively participating in customer acquisition, marketing, research, HR or operations.

- **[2024 Oct - Feb] AI Stock Photo Generator MVP** - We successfully built an advanced AI system capable of generating images. I was responsible for leading the product and technical design. Additionally, I also participated in early customer acquisition. The product use case is when a business wants to create stock photos of their product with different backgrounds. Previously, they needed to stage photoshoots. By utilizing our AI to generate stock photos of their products with different backgrounds, we could save businesses significant amounts of money in their marketing and customize photos to more targeted audiences. As a result of my team's efforts, we currently have an interested party in buying this product. Yiqi is not interested in pursuing this product direction any further despite the interest in generating revenue from potential customers. From a technical position, we delivered an MVP that people are interested in using. Yiqi was not involved in this MVP.

**[2024 Oct - Jan] Generative AI Video MVP (FAILED)** - This is the project led by Yiqi failed. This team was not able to deliver a finished MVP due to her lack of leadership and technical capabilities.

Secondly, Yiqi's email states that I have "Insufficient Contribution to Product Direction". See the accomplishments above. I have done the research, built a team and delivered as promised on the major key products for the company throughout the year. They have market validation because we had $2K daily GMV, active users and interested parties in purchasing the system. These accomplishments are the direct result of my leadership in Aimerce.

Third, Lei is currently the tech lead on one new project and not all projects in Aimerce. It is a serious misrepresentation of the facts to say that he is operating as an engineering manager for Aimerce engineering. Therefore, Yiqi's statement is not correct and not an accurate reflection of the current situation within Aimerce.

Fourth, the assessment is incorrect because the provided example is not written by me alone. Furthermore, she only discovered and fixed these issues herself after she found out I'm pregnant. This is not an accurate representation of my technical expertise as a front-end engineer.

Lastly, I never agreed to be replaced as a co-founder or CTO, but fully committed to Aimerce as a co-founder. I agreed that a more focused CTO would be better since I am doing more things than a traditional CTO right now. Yiqi should not inaccurately claim that I requested for any early departure.

Aimerce has no reason to wrongfully terminate my founder and CTO's status only because Yiqi seeks to forfeit my rights and interests in Aimerce.  I request Yiqi withdraw this email containing false claims against me immediately and do not include in any Aimerce's business record since this email only reflects her own personal interest and action without proper basis.


Zhi



On Tue, Feb 13, 2024 at 11:28 AM Yiqi Wu <yiqiw@aimerce.ai> wrote:

Summary of the 1:1 feedback conversation.

Zhi has not met the performance expectations of her co-founder & CTO role. In an early-stage startup, a founder is typically responsible for three main areas: (1) Engineering leadership, tech innovation, and quality control. (2) Product direction exploration and validation. (3) Market research and customer acquisition. **Zhi has not excelled in any particular areas. She has been struggling to find her place within the company and contribute value.**

1. **Lack of Leadership as CTO.** Zhi has struggled to lead the engineering team effectively and encourage technological innovation and exploration. There has been minimal to no technical direction since she took the role. It is mostly Lei from engineering and Yiqi who's been leading the engineering innovation exploration and direction.
2. **Insufficient Contribution to Product Direction.** Zhi has not provided meaningful contributions to the company's direction and has not conducted due diligence to validate ideas or propose valuable directional advice.
3. **Over-Reliance on Others to Perform Duties.** Most of the engineering management work is currently led by Lei, and Zhi has relied on engineers to explore cutting-edge technology, e.g. stable diffusion models, ML/AI explorations.

4. **Lack of strong technical expertise.** Zhi's performance as a frontend engineer was around junior to mid-level skill. One example was building a landing page. It was a very simple and straightforward task and yet there were more than 10+ bugs and typos. The engineering quality was very low. And Zhi pushed code in fewer than 20 days in the past half a year.

As a result of these issues, I (as the CEO) have had to assume many of the responsibilities that Zhi did not fulfill. This additional load and the handling of an underperforming co-founder has created unnecessary stress.

To ensure Aimerce's success, which is in both me and Zhi's interest, Zhi and I must make the difficult decision to recruit a new co-founder & CTO. Zhi agreed on this feedback that she's not fulfilling the CTO duty and confirmed that it is an urgent need that we replace her with a new co-founder & CTO.

-Yiqi

# EXHIBIT 2

5/6/24, 8:36 AM
mercalaw.com Mail - Letter for Aimerce, Inc.

Case 3:24-cv-02747   Document 1   Filed 05/08/24   Page 21 of 37

 Gmail

Shanshan Zou <sszlaw@mercalaw.com>

## Letter for Aimerce, Inc.

**Shanshan Zou** <sszlaw@mercalaw.com>
To: HC@grellas.com, mm@grellas.com, lr@grellas.com, ll@grellas.com
Cc: yiqiw@aimerce.ai

Thu, Feb 15, 2024 at 4:52 PM

Dear Counsels,

Please see the attached Letter for Aimerce, Inc.

Shanshan Zou, Esq.
Attorney & Solicitor
Vincit Law P.C.
1 Sansome Street
Suite 3500
San Francisco, CA 94104
tel: 415-677-4497
email: sszlaw@mercalaw.com

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL.  IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE.  IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION BY ERROR, PLEASE NOTIFY AND RETURN THE ORIGINAL MESSAGE TO THE SENDER.  THANK YOU.

# VINCIT LAW P.C.

1 Sansome Street, Suite 3500, San Francisco, CA 94104
Shanshan Zou, Esq. tel: 415-677-4497  email: sszlaw@mercalaw.com

February 15, 2024

Aimerce, Inc.
c/o Holly Carmichael, Leon Liu, Mital Makadia, Lucy Ruble
20400 Stevens Creek Blvd.
Suite 280, Cupertino
CA 95014

<u>CONFIDENTIAL COMMUNICATION SEEKING WORKPRODUCTS AND CORPROATE RECORDS</u>

Dear Counsels:

It is our understanding that your firm represents Aimerce, Inc. ("Aimerce"). Please be advised that I am writing this letter on behalf of Zhi Sun, the co-founder, shareholder, director and CTO of Aimerce, Inc. to gather two groups of documents.  Your professional corporation is sincerely appreciated.

Please note that Ms. Sun requests your firm consider this letter confidential and shall only disclose to Aimerce but not to third parties without Aimerce authorized written waiver.

First, we would like to request the following to be produced by Aimerce, please advise the Human Resource of Aimerce accordingly as its counsel.
- Any instrument signed by Zhi Sun relating to her employment at Aimerce. (Labor Code, § 432.)
- All personnel records of Zhi Sun in Aimerce possession that relate to her employment at Aimerce. (Labor Code, § 1198.5, subd. (a).)
- Any and all of Zhi Sun's payroll records and wage statements, and any employment related payment records from Aimerce. (Labor Code, Code, § 226, subd (b))

Pursuant to the California Labor Law, please provide these documents as soon as possible, but not later than 21 days from the date of this request for the payroll records and 30 days from the date of this request for the remaining records by delivering copies to Shanshan Zou, Esq., 1 Sansome Street, Suite 3500, San Francisco, CA 94104 with an electronic copy to sszlaw@mercalaw.com

Secondly, as co-founder, shareholder and director of Aimerce, Ms. Sun hereby makes a formal demand to collect the following documents which your firm prepared as and continuously acts as counsel for Aimerce to cause fully executed, and maintains in your firm's possession.
- The fully executed versions of all corporate agreements prepared by your firm for Aimerce or paid for by Aimerce for founders and shareholders.
- All agreements prepared by your firm with Aimerce as a signatory.
- All written communications exchanged between your firm and Aimerce, regardless of who acts on behalf of Aimerce, including any agreement entered between Aimerce and your firm, the memorandum produced, emails exchanged, and all documents provided on behalf of Aimerce.

Holly Carmichael, Leon Liu, Mital Makadia, Lucy Ruble
February 16, 2024
Page 2

- All invoices issued by your firm to Aimerce, and copies of checks, records of wiring or other payment methods.

It is understood that you include the language to waive statutory inspection right in section 10 set forth in the Share Purchase Agreement. However, please be advised that the relevant case laws in Delaware and in California all refused to enforce such waiver clause but confirm the absolute right of inspection and copy corporate records as Shareholder and/or Director under the General Corporation Law of Delaware Section 220 and California Corporation Code Section 1601, 1602. More importantly, as co-founder, shareholder and director of Aimerce, and a signatory of those corporate documents, has the full right to request those documents and Aimerce's business records provided to her through this letter.

At the last, please kindly be reminded that your firm has been engaged by Aimerce and under the Cannon of Ethics and applicable laws, you are required to remain neutral but shall not take side of any co-founder, shareholder, director, and officer when you act as counsels on behalf of Aimerce.

Ms. Sun is merely requesting documents which she is entitled to, and which should be provided under law and as your firm's work products for Aimerce. We look forward to your response via electronic transfer to sszlaw@mercalaw.com no later than February 22, 2024. If you have any questions, please email me to schedule a phone conference.

Sincerely,
*/s/ Shanshan Zou*
Shanshan Zou, Esq.
Attorney for Zhi Sun

# EXHIBIT 3

吴一琦



我们可以讨论一些对你有利的方法 如果我转嫁给legal的话 这里我就没有很大的控制权了

2月15日 13:34

你先好好休息吧 我和他们说再给我几天时间

2月15日 13:40

我争取让他们同意多给一些钱 你这样ok吗?

对我来说你的股份和我也无关 这里都是回到公司pool里所以我是完全没有benefit的 反而还少了一个人工作 我去聊聊争取一下钱

2月16日 09:16

I saw you involved law firm. We will just leave everything to law firms. Aimerce council will contact you from now on.

# EXHIBIT 4

发件人：**Yiqi Wu** <yiqiw@aimerce.ai>

日期：2024 年 2 月 17 日 周六 04:25

主题：Notice of termination

收件人：Zhi Sun <zsun@aimerce.ai>

抄送：Zhi Sun <sunzhi1229@gmail.com>

Hi Zhi,

I am writing to inform you that, following thorough deliberation and consideration, we have come to the difficult decision to terminate your employment with Aimerce Inc., effective immediately.

This decision was not made lightly. It comes after extensive reflection on the alignment between your skills and the requirements of the Chief Technology Officer (CTO) role. Over the past months, it has become apparent that there is a significant mismatch, which has resulted in challenges in finding a productive fit for you within the company at this stage.

Throughout your tenure, we have undertaken several initiatives to address these challenges:

1. In early November 2023, we held a one-on-one discussion to encourage you to engage more directly in coding alongside our engineers. However, since late July, there has been limited engagement on your part, with coding contributions on fewer than 15 days over more than a six-month period, primarily in straightforward frontend tasks. (For reference, see GitHub contributions).
2. On January 19th, I shared feedback regarding concerns that you were not fulfilling the duties expected of a CTO. During this conversation, we discussed the potential for Lei from our engineering team to assume more leadership responsibilities. Lei has since demonstrated exceptional capability in leading engineering efforts. (For details, see Lei's engineering leadership notes).
3. On January 24th, we spoke about the possibility of recruiting a new CTO. You agreed on that. You expressed a preference for focusing on social media management, operational tasks, and part-time frontend engineering, along with a willingness to adjust your salary expectations to 30k CNY/month. (This was communicated through Slack).
4. On Jan 18th and Feb 9th, I communicated bugs (10+) on the landing page project you collaborated on with another engineer. Issues with the engineering quality, particularly highlighted by the discovery of multiple bugs in the landing page project you collaborated on, have further underscored the challenges. (This was communicated through Slack).

Despite these efforts, it has become increasingly clear that the current situation is not conducive to the success we envision for Aimerce. Your initial decision to join Aimerce and take on significant risk is both recognized and appreciated. The feedback provided does not diminish the courage it took to embark on this journey with us and your contribution to the birth of the company.

Should you have any questions or concerns, please do not hesitate to reach out to me directly or to the Aimerce legal counsel at ds@grellas.com.

The company has also elected to repurchase your unvested equity.  Please see attached notice of the same.

We sincerely wish you all the best in your future endeavors and are confident in your potential to succeed in new opportunities.

Warm regards,

Yiqi Wu

CEO

# EXHIBIT 5

DocuSign Envelope ID: 5CFE4B9C-1FAA-4410-98F1-DC8E64298EB4

February 16, 2024

<u>VIA E-Mail</u>

Zhi Sun

<u>Notice of Exercise of Repurchase Option</u>

Dear Zhi,

Following the termination of your employment relationship with Aimerce Inc., a Delaware corporation (the "Company"), as of February 16, 2024, your 4,500,000 shares of Common Stock of the Company, which were granted pursuant to a Stock Purchase Agreement dated May 2, 2023 and subject to a Founder Vesting Agreement dated October 16, 2023 (the "Vesting Agreement"), ceased to vest in accordance with Section 4 of the Vesting Agreement. This letter serves to inform you that, pursuant to the terms of the Vesting Agreement, the Company has exercised its right to repurchase from you 4,500,000 shares of unvested Common Stock of the Company (the "Non-Vested Stock").

Payment in the amount of $45.00, the original purchase price for the Non-Vested Stock, has been made to you via wire transfer by the Company. Upon receipt of the payment, all 4,500,000 shares of your Common Stock of the Company shall be deemed repurchased pursuant to procedures specified in the Vesting Agreement and the Company shall transfer such shares of the Common Stock to its own name.

If you have any questions, please contact me directly.

Sincerely,

Yiqi Wu
Chief Executive Officer

# EXHIBIT 6

 Gmail

**Shanshan Zou <sszlaw@mercalaw.com>**

---

## Wrongful Termination of Zhi Sun

---

**Shanshan Zou** <sszlaw@mercalaw.com>                                         Fri, Feb 16, 2024 at 5:27 PM
To: Dhaivat Shah <ds@grellas.com>, HC@grellas.com, mm@grellas.com, lr@grellas.com
Bcc: Zhi Sun <sunzhi1229@gmail.com>

Dear Mr. Shah,

Please be advised that on behalf of the Co-Found, Shareholder, Director and CTO Zhi Sun, I sent the attached letter
yesterday. While I am waiting for your firm's reply, less than 24 hours, we received the following termination notice from
Aimerce, Inc.'s CEO.

I will look forward to your confirmation that Aimerce, Inc. has authorized Ms. Wu to send out the following.


---------- 转发的邮件 ---------
发件人：**Yiqi Wu** <yiqiw@aimerce.ai>
日期：2024年2月17日 周六04:25
主题：Notice of termination
收件人：Zhi Sun <zsun@aimerce.ai>
抄送：Zhi Sun <sunzhi1229@gmail.com>


Hi Zhi,

I am writing to inform you that, following thorough deliberation and consideration, we have come to the difficult decision to
terminate your employment with Aimerce Inc., effective immediately.

This decision was not made lightly. It comes after extensive reflection on the alignment between your skills and the
requirements of the Chief Technology Officer (CTO) role. Over the past months, it has become apparent that there is a
significant mismatch, which has resulted in challenges in finding a productive fit for you within the company at this stage.

Throughout your tenure, we have undertaken several initiatives to address these challenges:

1. In early November 2023, we held a one-on-one discussion to encourage you to engage more directly in coding
   alongside our engineers. However, since late July, there has been limited engagement on your part, with coding
   contributions on fewer than 15 days over more than a six-month period, primarily in straightforward frontend
   tasks. (For reference, see GitHub contributions).
2. On January 19th, I shared feedback regarding concerns that you were not fulfilling the duties expected of a
   CTO. During this conversation, we discussed the potential for Lei from our engineering team to assume more
   leadership responsibilities. Lei has since demonstrated exceptional capability in leading engineering efforts. (For
   details, see Lei's engineering leadership notes).
3. On January 24th, we spoke about the possibility of recruiting a new CTO. You agreed on that. You expressed a
   preference for focusing on social media management, operational tasks, and part-time frontend engineering,
   along with a willingness to adjust your salary expectations to 30k CNY/month. (This was communicated
   through Slack).
4. On Jan 18th and Feb 9th, I communicated bugs (10+) on the landing page project you collaborated on with
   another engineer. Issues with the engineering quality, particularly highlighted by the discovery of multiple bugs in
   the landing page project you collaborated on, have further underscored the challenges. (This was
   communicated through Slack).

Despite these efforts, it has become increasingly clear that the current situation is not conducive to the success we
envision for Aimerce. Your initial decision to join Aimerce and take on significant risk is both recognized and appreciated.
The feedback provided does not diminish the courage it took to embark on this journey with us and your contribution to
the birth of the company.

Should you have any questions or concerns, please do not hesitate to reach out to me directly or to the Aimerce legal
counsel at ds@grellas.com.

The company has also elected to repurchase your unvested equity. Please see attached notice of the same.

We sincerely wish you all the best in your future endeavors and are confident in your potential to succeed in new opportunities.

Warm regards,

Yiqi Wu

CEO

Shanshan Zou, Esq.
Attorney & Solicitor
Vincit Law P.C.
1 Sansome Street
Suite 3500
San Francisco, CA 94104
tel: 415-677-4497
email: sszlaw@mercalaw.com

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION BY ERROR, PLEASE NOTIFY AND RETURN THE ORIGINAL MESSAGE TO THE SENDER. THANK YOU.

---

**2 attachments**

 **Letter for Corporate Doc and Employment Profile.pdf**
134K

**Notice of Exercise of Repurchase - Zhi Sun.DOC.pdf**
262K

# VINCIT LAW P.C.

1 Sansome Street, Suite 3500, San Francisco, CA 94104
Shanshan Zou, Esq. tel: 415-677-4497  email: sszlaw@mercalaw.com

February 15, 2024

Aimerce, Inc.
c/o Holly Carmichael, Leon Liu, Mital Makadia, Lucy Ruble
20400 Stevens Creek Blvd.
Suite 280, Cupertino
CA 95014

CONFIDENTIAL COMMUNICATION SEEKING WORKPRODUCTS AND CORPROATE RECORDS

Dear Counsels:

It is our understanding that your firm represents Aimerce, Inc. ("Aimerce"). Please be advised that I am writing this letter on behalf of Zhi Sun, the co-founder, shareholder, director and CTO of Aimerce, Inc. to gather two groups of documents.  Your professional corporation is sincerely appreciated.

Please note that Ms. Sun requests your firm consider this letter confidential and shall only disclose to Aimerce but not to third parties without Aimerce authorized written waiver.

First, we would like to request the following to be produced by Aimerce, please advise the Human Resource of Aimerce accordingly as its counsel.

- Any instrument signed by Zhi Sun relating to her employment at Aimerce. (Labor Code, § 432.)
- All personnel records of Zhi Sun in Aimerce possession that relate to her employment at Aimerce. (Labor Code, § 1198.5, subd. (a).)
- Any and all of Zhi Sun's payroll records and wage statements, and any employment related payment records from Aimerce. (Labor Code, Code, § 226, subd (b))

Pursuant to the California Labor Law, please provide these documents as soon as possible, but not later than 21 days from the date of this request for the payroll records and 30 days from the date of this request for the remaining records by delivering copies to Shanshan Zou, Esq., 1 Sansome Street, Suite 3500, San Francisco, CA 94104 with an electronic copy to sszlaw@mercalaw.com

Secondly, as co-founder, shareholder and director of Aimerce, Ms. Sun hereby makes a formal demand to collect the following documents which your firm prepared as and continuously acts as counsel for Aimerce to cause fully executed, and maintains in your firm's possession.

- The fully executed versions of all corporate agreements prepared by your firm for Aimerce or paid for by Aimerce for founders and shareholders.
- All agreements prepared by your firm with Aimerce as a signatory.
- All written communications exchanged between your firm and Aimerce, regardless of who acts on behalf of Aimerce, including any agreement entered between Aimerce and your firm, the memorandum produced, emails exchanged, and all documents provided on behalf of Aimerce.

Holly Carmichael, Leon Liu, Mital Makadia, Lucy Ruble
February 16, 2024
Page 2

- All invoices issued by your firm to Aimerce, and copies of checks, records of wiring or other payment methods.

It is understood that you include the language to waive statutory inspection right in section 10 set forth in the Share Purchase Agreement. However, please be advised that the relevant case laws in Delaware and in California all refused to enforce such waiver clause but confirm the absolute right of inspection and copy corporate records as Shareholder and/or Director under the General Corporation Law of Delaware Section 220 and California Corporation Code Section 1601, 1602. More importantly, as co-founder, shareholder and director of Aimerce, and a signatory of those corporate documents, has the full right to request those documents and Aimerce's business records provided to her through this letter.

At the last, please kindly be reminded that your firm has been engaged by Aimerce and under the Cannon of Ethics and applicable laws, you are required to remain neutral but shall not take side of any co-founder, shareholder, director, and officer when you act as counsels on behalf of Aimerce.

Ms. Sun is merely requesting documents which she is entitled to, and which should be provided under law and as your firm's work products for Aimerce. We look forward to your response via electronic transfer to sszlaw@mercalaw.com no later than February 22, 2024. If you have any questions, please email me to schedule a phone conference.

Sincerely,
*/s/ Shanshan Zou*
Shanshan Zou, Esq.
Attorney for Zhi Sun

DocuSign Envelope ID: 5CFE4B9C-1FAA-4410-98F1-DC8E64298EB4

February 16, 2024

VIA E-Mail

Zhi Sun

<u>Notice of Exercise of Repurchase Option</u>

Dear Zhi,

 Following the termination of your employment relationship with Aimerce Inc., a Delaware corporation (the "<u>Company</u>"), as of February 16, 2024, your 4,500,000 shares of Common Stock of the Company, which were granted pursuant to a Stock Purchase Agreement dated May 2, 2023 and subject to a Founder Vesting Agreement dated October 16, 2023 (the "<u>Vesting Agreement</u>"), ceased to vest in accordance with Section 4 of the Vesting Agreement. This letter serves to inform you that, pursuant to the terms of the Vesting Agreement, the Company has exercised its right to repurchase from you 4,500,000 shares of unvested Common Stock of the Company (the "<u>Non-Vested Stock</u>").

 Payment in the amount of $45.00, the original purchase price for the Non-Vested Stock, has been made to you via wire transfer by the Company. Upon receipt of the payment, all 4,500,000 shares of your Common Stock of the Company shall be deemed repurchased pursuant to procedures specified in the Vesting Agreement and the Company shall transfer such shares of the Common Stock to its own name.

 If you have any questions, please contact me directly.

Sincerely,

Yiqi Wu
Chief Executive Officer

Case 3:24-cv-02747    Document 1    Filed 05/08/24    Page 37 of 37

 **Gmail**

Shanshan Zou <sszlaw@mercalaw.com>

---

## Wrongful Termination of Zhi Sun

---

**Dhaivat Shah** <ds@grellas.com>
To: Shanshan Zou <sszlaw@mercalaw.com>
Cc: Mital Makadia <mm@grellas.com>

Sun, Feb 18, 2024 at 12:31 PM

Hi Shanshan, thank you for your email.  I write to confirm receipt of your letter of February 15.  We are considering your letter and will respond.  I also write to confirm that Aimerce has terminated Ms. Sun's employment, per Ms. Wu's email.  Separately, Aimerce understands that there has been an action by written consent by holders of the majority of Aimerce capital stock removing Ms. Sun from the Aimerce board of directors.  Aimerce provides Ms. Sun notice of the same as attached.  Thank you.  Dhaivat.

---

**From:** Shanshan Zou <sszlaw@mercalaw.com>
**Sent:** Friday, February 16, 2024 5:28 PM
**To:** Dhaivat Shah <ds@grellas.com>; Holly Carmichael <HC@grellas.com>; Mital Makadia <mm@grellas.com>; Lucy Ruble <lr@grellas.com>
**Subject:** Wrongful Termination of Zhi Sun

Dear Mr. Shah,

Please be advised that on behalf of the Co-Found, Shareholder, Director and CTO Zhi Sun, I sent the attached letter yesterday. While I am waiting for your firm's reply, less than 24 hours, we received the following termination notice from Aimerce, Inc.'s CEO.

I will look forward to your confirmation that Aimerce, Inc. has authorized Ms. Wu to send out the following.

---------- 转发的邮件 ---------
发件人：**Yiqi Wu** <yiqiw@aimerce.ai>
日期：2024年2月17日 周六 04:25
主题：Notice of termination
收件人：Zhi Sun <zsun@aimerce.ai>
抄送：Zhi Sun <sunzhi1229@gmail.com>

Hi Zhi,

I am writing to inform you that, following thorough deliberation and consideration, we have come to the difficult decision to terminate your employment with Aimerce Inc., effective immediately.

This decision was not made lightly. It comes after extensive reflection on the alignment between your skills and the requirements of the Chief Technology Officer (CTO) role. Over the past months, it has become apparent that there is a significant mismatch, which has resulted in challenges in finding a productive fit for you within the company at this stage.

Throughout your tenure, we have undertaken several initiatives to address these challenges: